# In the United States Court of Federal Claims

Nos. 11-400 C, 11-416 C
(CONSOLIDATED)

(Filed Under Seal: July 15, 2011)
(Reissued: July 22, 2011)[*]

| | | |
|---|---|---|
| ********************************************* | | Postaward Bid Protests; 28 U.S.C. |
| JOINT VENTURE OF COMINT SYSTEMS | * | § 1491(b); Motions to Compel |
| CORPORATION AND EYEIT.COM, INC., | * | Supplementation of the Agency- |
| and NETSERVICES & ASSOCIATES, LLC, | * | Assembled Record in Order to |
| | * | Require Agency to Produce |
| Plaintiffs, | * | Complete Record; Motions to |
| | * | Dismiss Untimely Protest Grounds; |
| v. | * | Axiom Resource Management, Inc.; |
| | * | Difference Between Supplementing |
| THE UNITED STATES, | * | and Completing an Agency Record; |
| | * | "Core Documents" Relevant to |
| Defendant, | * | Protest;  RCFC Appendix C § 7, |
| | * | ¶¶ 22-23; Meaningful Judicial |
| and | * | Review Premised Upon Complete |
| | * | Record of Agency's Procurement; |
| NETCENTRICS CORPORATION, | * | Linc Government Services, LLC; |
| DIGITAL MANAGEMENT, INC., and | * | Agency Cannot Limit Record to |
| POWERTEK CORPORATION, | * | Materials It Deems Relevant; |
| | * | Exxon Corp.; Internal Deliberative |
| Defendant-Intervenors. | * | Documents Excluded Absent |
| ********************************************* | | Allegations of Bad Faith |

Philip F. Hudock, Reston, VA, for Joint Venture of Comint Systems Corporation, and EyeIT.com, Inc. and David B. Dempsey and Jeffery M. Chiow, Washington, DC, for NetServices & Associates, LLC, for plaintiffs.

Alexander V. Sverdlov and Steven Michael Mager, United States Department of Justice, Washington, DC, for defendant.

Jeremy William Dutra, Washington, DC, for NetCentrics Corporation, David Phillip Metzger, McLean, VA, for Digital Management, Inc., and Gerard Francis Doyle, Alexandria, VA, for PowerTek Corporation, for defendant-intervenors.

---

[*] On July 22, 2011, the parties filed a joint status report indicating that no redactions were necessary.

**RULING ON PLAINTIFFS' MOTIONS TO COMPEL SUPPLEMENTATION OF THE
ADMINISTRATIVE RECORD**

**SWEENEY**, Judge

Before the court are the following: (1) a motion filed by plaintiff NetServices &
Associates, LLC ("NetServices") to compel supplementation of the administrative record
("NetServices's motion"); (2) a motion filed by plaintiff Joint Venture of Comint Systems
Corporation & EyeIT.com, Inc. ("Comint") to compel supplementation of the administrative
record ("Comint's motion")[1]; and (3) plaintiffs' joint supplemental motion to compel
supplementation of the administrative record ("joint supplemental motion"). These motions arise
in this consolidated, postaward bid protest, wherein plaintiffs allege that the United States
Department of Defense ("Defense Department"), through the Washington Headquarters Service
("WHS") at the Pentagon, among other things, violated statutes and regulations, failed to adhere
to the evaluation factors set forth in the solicitation, and manipulated the evaluation process
during its acquisition of Net-Centric Integrated Enterprise Information Technology Services
("NIEITS"). Plaintiffs assert that the agency-assembled administrative record is incomplete and
that a complete record would contain evidence that is (1) related to specific allegations raised in
their complaints and (2) necessary for effective judicial review.[2] NetServices emphasizes that
plaintiffs' requests, while styled as motions to "supplement," seek nothing more than the
compilation and presentation of a complete agency-assembled record. Ultimately, plaintiffs seek
to "complete" the record that was developed contemporaneously with the WHS's decision-
making process and do not request the incorporation of "extra-record" evidence.[3]

Defendant and three awardees of NIEITS contracts, defendant-intervenors NetCentrics
Corporation ("NetCentrics"), Digital Management, Inc. ("DMI"), and PowerTek Corporation
("PowerTek"), oppose plaintiffs' motions, in part, because some evidence plaintiffs seek to
include in the record concerns plaintiffs' challenges to Amendment 5 of the solicitation.
Defendant and DMI have moved to dismiss those portions of plaintiffs' original complaints
related to Amendment 5 on the grounds that the protests are untimely, and defendant and
defendant-intervenors assert that the record should not incorporate materials that support an

---

[1] Comint's motion "adopts[] and incorporates by reference" NetServices's motion and
memorandum in support thereof. Comint's Mot. 2 ¶ 3(a)-(b).

[2] On July 11, 2011, Comint filed its first amended complaint. NetServices filed its first
amended complaint for declaratory judgment and injunctive relief on July 13, 2011.

[3] Nevertheless, NetServices states that supplementation with extra-record evidence may
be necessary if the WHS cannot produce a complete record upon which its decision-making was
based.

untimely protest.[4]

The issue before the court at this juncture is whether the agency-assembled record is incomplete, not whether portions of the complaints must be dismissed on the timeliness grounds raised by defendant and DMI.  For the reasons set forth below, NetServices's motion and Comint's motion are granted in part and denied in part, and plaintiffs' joint supplemental motion is granted in part and denied in part as moot.  Furthermore, in light of the instant ruling and plaintiffs filing amended complaints, the motions to dismiss portions of the original complaints filed by defendant and DMI are denied as moot.

## I.  BACKGROUND

Various entities within the Defense Department contracted with several companies that provided information technology ("IT") support in the following areas: help desk, server, network, and applications.  The WHS eventually sought to "combine existing legacy support contracts to obtain a full range of integrated enterprise net-centric IT supplies and services that provide[d] all users with responsive and efficient access to common information and services on a daily basis, including timely disaster business recovery support."  AR 8.  To that end, the WHS developed the NIEITS procurement, which enabled the Defense Department "to acquire seamless, reliable, and responsive enterprise solutions for IT services . . . that improve existing services resulting in a stable and secure enterprise IT network which meets the functionality, speed, and capacity expectations of end users while complying with Department of Defense . . . and Federal rules and regulations."  Id. at 6.

On August 2, 2010, the WHS issued a solicitation for a multiple award, indefinite delivery/indefinite quantity contract to small businesses for the provision of IT solutions through performance of a broad range of services that included the integration of several types of support critical to the services being acquired.  The NIEITS solicitation consisted of three elements: (1) the Basic Contract; (2) Task Order 1, Enterprise IT Operations Services; and (3) Task Order 2, Enterprise IT Engineering Support Services.  Offerors were required to submit proposals based upon all three elements by September 13, 2010.

Fourteen offerors submitted proposals.  The WHS determined that each proposal satisfied the minimum eligibility requirements set forth in the solicitation, and all fourteen offerors were invited to give oral proposal presentations.  The period during which offerors gave oral proposal

---

[4]  Defendant filed its motion to dismiss those portions of the original complaints that challenge Amendment 5 of the solicitation pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), and DMI moved to dismiss pursuant to RCFC 12(b)(6).  In its opposition to plaintiffs' motions, NetCentrics adopts, and incorporates by reference, the arguments set forth in defendant's motion to dismiss.  PowerTek also opposes plaintiffs' motions, but it did not move to dismiss as untimely those portions of the original complaints related to Amendment 5.

presentations concluded on October 4, 2010.  On January 19, 2011, the WHS issued Amendment 5 to the solicitation, which informed offerors that the work specified in the solicitation for Task Order 1 and Task Order 2 "no longer reflect[ed] the Government requirements."  Id. at 6688. Pursuant to Amendment 5, the WHS did not award Task Order 1 and Task Order 2 with the Basic Contract.  Nevertheless, the WHS, through Amendment 5, advised offerors that "pricing submittals for Task Order 1 and Task Order 2 [would] be used for evaluation purposes only for Factor 3: Price for award of the Basic Contract, as originally indicated in the solicitation to all offerors."  Id.

Thereafter, the WHS determined that nine of the fourteen proposals were ineligible for a Basic Contract award.  Of the remaining five proposals, three–those submitted by DMI, NetCentrics, and PowerTek–were recommended for award based upon the source selection authority's determination that they represented the best value to the government.  On March 1, 2011, the contracting officer notified offerors of the WHS's intention to award three contracts under the NIEITS procurement to DMI, NetCentrics, and PowerTek.  The WHS awarded those contracts on April 6, 2011.

NetServices filed a bid protest with the Government Accountability Office ("GAO") on April 15, 2011.  In its protest, NetServices alleged that the WHS failed to evaluate proposals in accordance with the evaluation criteria set forth in the solicitation and made improper assumptions about its proposal.  The GAO dismissed NetServices's protest on June 17, 2011. Comint also challenged the WHS's awards by filing a protest with the WHS on April 18, 2011. In its protest, Comint alleged that post-submission amendments, including Amendment 5, materially changed the requirements of the solicitation and claimed that the WHS improperly evaluated its proposal.  The WHS denied Comint's protest on June 1, 2011.  Comint filed its protest in the United States Court of Federal Claims ("Court of Federal Claims") on June 20, 2011, and NetServices filed its protest three days later.  The court consolidated the protests on June 24, 2011.

## II. PLAINTIFFS' MOTIONS

### A. Plaintiffs' Requests

In its motion, NetServices asserts that the 14,000-page agency-assembled record "fails to incorporate key documents necessary to resolve allegations" set forth in the original (and now amended) complaints.  NetServices's Mot. 2.  NetServices classifies these documents into six broad categories: (1) WHS estimates of cost of performance; (2) records of any discussions or meetings between the WHS and any interested party concerning the procurement; (3) protester, awardee, and other interested party responses to the solicitation; (4) WHS evaluations of proposals and other responses to the solicitation, including supporting documentation; (5) the WHS source selection decision, including supporting documentation; and (6) justifications, approvals, determinations, and any findings prepared for the procurement by the WHS pursuant to statutes or regulations.  These six broad categories are further divided into ten subcategories:

(1) WHS evaluations in September 2010 after receipt of proposals and prior to its issuance of oral presentation invitations to offerors; (2) WHS evaluations of proposals prior to the issuance of Amendment 5 to the solicitation; (3) documents prepared by individual evaluators of offerors' proposals; (4) documents evidencing a need for Amendment 5 to the solicitation; (5) documents setting forth any justifications for Amendment 5 to the solicitation; (6) records of discussions of offerors' ineligibility based upon pricing errors, pricing assumptions, and unreasonable pricing estimates; (7) Independent Government Cost Estimates; (8) records reflecting WHS source selection personnel activities that were carried out in support of the source selection; (9) formal or informal correspondence transmitting or discussing any evidence related to plaintiffs' motions; and (10) the last pages of Offeror #7's award notice and debriefing containing pricing analysis.[5] All of these materials, NetServices argues, are part of the WHS's decision-making process but are absent from the record assembled by the WHS.  Correction of the record in order to include these materials, NetServices asserts, is necessary to promote meaningful judicial review.

In their joint supplemental motion, plaintiffs identify additional evidence they believe has been omitted from the agency-assembled record.  These materials, which NetServices states also fall within the six broad categories listed above, include (1) "supporting information" from all offerors in response to their pricing worksheets, (2) documents and records related to NetCentrics's potential organizational conflicts of interest and the WHS's efforts to evaluate any mitigation plans, and (3) any portions of oral presentations that were not previously furnished. Correction of the record in order to include these materials, NetServices asserts, is also necessary to promote meaningful judicial review.

In essence, plaintiffs contend that the boundaries of the administrative record cannot be limited to what the WHS believes should be incorporated therein.  Their requests, they emphasize, are for records that were previously before the WHS and do not consist of extra-record materials that were generated after the procurement.  Furthermore, plaintiffs challenge arguments raised by defendant and defendant-intervenors in opposition to their motions based upon the purported untimeliness of certain protest grounds, asserting that the production of a complete administrative record is a separate and unrelated matter.

## B.  Defendant and Defendant-Intervenors' Responses

### 1.  Defendant's Position

Defendant objects to plaintiffs' motions because it contends that plaintiffs' requests relate more to an evaluation of their original (and now amended) complaints than the underlying agency action at issue in this consolidated protest.  Defendant argues that plaintiffs "failed to demonstrate why those documents are necessary for effective judicial review of the agency's

---

[5] Defendant acknowledges that documents listed in the tenth subcategory were inadvertently omitted from the agency-assembled record and states it will provide these materials.

decision," Def.'s Opp'n 11, because, it states, the record already contains the documents upon which the WHS relied when making its decision.  It explains:

> The corrected administrative record we filed includes all the final evaluations and decision memoranda that formed the basis of the WHS's decision to award the contract to defendant-intervenors.  These documents lay out the path that the agency followed and provide justification for the final decision.  The challenged conclusion and the reasoning behind it are already part of the corrected administrative record.

Id. at 13.  To that end, defendant notes that any documents upon which the WHS did not rely when making its final decision, such as plaintiffs' requests for what it characterizes as pre-decisional and deliberative materials that bear no relation to the WHS's final decision, are not part of the agency-assembled record.  Moreover, defendant argues that plaintiffs failed to show that the WHS actually relied upon the documents they now seek when it rendered decisions to award NIEITS contracts to defendant-intervenors.  Finally, defendant opposes inclusion of any materials related to Amendment 5 based upon its position that the court must dismiss plaintiffs' untimely protest claims.

With respect to plaintiffs' joint supplemental motion, defendant states that documentation for pricing worksheets already is part of the agency-assembled record.  It does not object to furnishing materials related to potential organizational conflicts of interest for NetCentrics. Finally, defendant explains that all recordings of offerors' oral proposal presentations that are in the government's possession have been included in the record, though it acknowledges that a portion of NetCentrics's recording was omitted due to a likely problem with the recording itself. Defendant represents that, if it can obtain the full recording, then it will produce it.

## 2.  DMI's Position

Like defendant, DMI, as noted above, has moved to dismiss portions of the original complaints related to Amendment 5 of the solicitation.  As such, DMI opposes plaintiffs' efforts to incorporate materials in subcategories 4 and 5 into the record because, it asserts, that evidence is not relevant to these protests.  Even if the court deems plaintiffs' challenges to Amendment 5 timely, DMI nevertheless argues that further evidence related to Amendment 5 of the solicitation is unnecessary because that amendment did not materially change the solicitation.  DMI does not set forth a position regarding the materials contained in NetServices's remaining subcategories, but it asserts that the WHS "is in the best position to . . . assess the existence of and relevance of any of the categories of documents sought by plaintiffs."  DMI's Opp'n 1.  Finally, with regard to plaintiffs' joint supplemental motion, DMI maintains that (1) materials related to all offerors are not relevant because they bear no relation to how the WHS evaluated plaintiffs' proposals, (2) the original complaints do not allege any protest grounds related to NetCentrics's conflicts of interest, and (3) NetCentrics's oral proposal presentation is irrelevant to how the WHS evaluated plaintiffs' proposals.

### 3.  NetCentrics's Position

NetCentrics opposes plaintiffs' request to include in the record materials falling within subcategories 2 through 5, arguing that those materials are "unquestionably directed to Plaintiffs' challenge to the terms of the solicitation; i.e., Amendment 0005."  NetCentrics's Opp'n 2.  These challenges, NetCentrics argues, are untimely.  In response to plaintiffs' joint supplemental motion, NetCentrics notes that all pricing worksheet information is already part of the record and argues that none of plaintiffs' requests relates to any protest ground.

### 4.  PowerTek's Position

Like DMI, PowerTek states that the government "is in the best position to know upon what evidence its actions and decisions in the procurement were based, and to address supplementation issues as directed by the Court."  PowerTek's Opp'n 2.  It also opposes inclusion of materials that it believes support "clearly untimely allegations . . . ."  Id.; accord id. at 4 (arguing that plaintiffs' "challenges to Amendment 005 are clearly untimely, [and] the supplementation sought concerning the need and justification for Amendment 005 is not relevant to any timely protest issues").  With respect to plaintiffs' joint supplemental motion, PowerTek notes that its pricing worksheet is already part of the record and opposes plaintiffs' efforts to obtain additional information related to its proposal.

### C.  Standards for Addressing Plaintiffs' Motions

The Administrative Dispute Resolution Act of 1996 ("ADRA"), Pub. L. No. 104-320, § 12, 110 Stat. 3870, 3874-76 (1996), expanded the bid protest jurisdiction of the Court of Federal Claims.  Pursuant to the ADRA, the Court of Federal Claims reviews the legality of an agency's decision in accordance with the standards set forth in the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706 (2006).  See Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057 (Fed. Cir. 2000); Asia Pac. Airlines v. United States, 68 Fed. Cl. 8, 19 (2005); see also 28 U.S.C. § 1491(b)(4) (2006) ("In any action under [section 1491(b)], the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5.").  "The task of the reviewing court is to apply the appropriate APA standard of review to the agency decision based on the record the agency presents to the reviewing court."  Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 743-44 (1985).  "As a general rule, in determining whether an agency's actions are arbitrary or irrational, the 'focal point for judicial review [of the agency's decision] should be the administrative record already in existence, not some new record made initially with the reviewing court.'"  Knowledge Connections, Inc. v. United States, 79 Fed. Cl. 750, 759 (2007) (quoting Fla. Power & Light Co., 470 U.S. at 743 (alteration in original)).  The principle that a reviewing court "is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions," Fla. Power & Light Co., 470 U.S. at 744, "exerts its maximum force when the substantive soundness of the agency's decision is under scrutiny," Esch v. Yeutter, 876 F.2d 976, 991 (D.C. Cir. 1989), disapproved on other grounds by Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1379-81 (Fed. Cir. 2009), rev'g 80 Fed.

Cl. 530 (2008).

The administrative record "is not a documentary record maintained contemporaneously with the events or actions included in it.  Rather, it is a convenient vehicle for bringing the decision of an administrative body before a reviewing agency or a court." Tech Sys., Inc. v. United States, 50 Fed. Cl. 216, 222 (2001).  "[I]t must be remembered that the 'administrative record is a fiction.'" Al Ghanim Combined Group Co. Gen. Trad. & Cont. W.L.L. v. United States, 56 Fed. Cl. 502, 508 (2003) (quoting CCL Serv. Corp. v. United States, 48 Fed. Cl. 113, 118 (2000)); see also PlanetSpace Inc. v. United States, 90 Fed. Cl. 1, 4 (2009) ("The conceptual elegance evinced by these fundamental principles of administrative law . . . masks the practical difficulty of identifying where the 'administrative record' ends and where 'extra-record' evidence begins.").  Therefore, the court eschews "apply[ing] an iron-clad rule automatically limiting its review to the administrative record." GraphicData, LLC v. United States, 37 Fed. Cl. 771, 779 (1997); accord id. at 780 ("[A] judge confronted with a bid protest case should not view the administrative record as [an] immutable boundary that defines the scope of the case."); Al Ghanim, 56 Fed. Cl. at 508 n.7 (recognizing that judges in the Court of Federal Claims will allow supplementation of the administrative record when appropriate); Cubic Applications, Inc. v. United States, 37 Fed. Cl. 345, 350 (1997) (stating within the bid protest context that "this court has adopted a flexible approach . . . in putting together the evidence that will be considered . . . , balancing the limited nature of the court's review with the competing need to recognize potential exceptions to treating the agency's submission as the four corners of the inquiry"[6]). Nevertheless, incorporation of extra-record evidence into the administrative record is not automatic, and "the flexibility of the court's scope of review does not give the parties carte blanche to supplement the record . . . ." Al Ghanim, 56 Fed. Cl. at 508.

---

[6] Eight such exceptions were identified by the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") in Esch.  See 876 F.2d at 991 (citing Steven Stark & Sarah Wald, The Failed Attempts to Limit the Record in Review of Administrative Action, 36 Admin. L. Rev. 333, 345 (1984)).  The United States Court of Appeals for the Federal Circuit ("Federal Circuit") disapproved of reliance upon Esch.  See Axiom Res. Mgmt., Inc., 564 F.3d at 1380-81.  Invocation of Esch, the Federal Circuit explained, was "problematic" for two reasons. Id. at 1380.  First, the exceptions articulated by the Esch court were derived from a law review article that predated the United States Supreme Court's decision in Florida Power & Light Co., which determined that a reviewing court must apply the appropriate APA standard to agency decisions based upon the record presented by the agency to the court.  Id.  Second, "Esch's vitality even within the D.C. Circuit is questionable in light of more recent opinions by that court which demonstrate a more restrictive approach to extra-record evidence." Id. (citing IMS, P.C. v. Alvarez, 129 F.3d 618 (D.C. Cir. 1997); Saratoga Dev. Corp. v. United States, 21 F.3d 445 (D.C. Cir. 1994)).  "[I]nsofar as [it] departs from fundamental principles of administrative law as articulated by the Supreme Court," the Federal Circuit stated that Esch "is not the law of this circuit." Id. at 1381.

In <u>Axiom Resource Management, Inc.</u>, the Federal Circuit emphasized that "the parties' ability to supplement the administrative record is limited," 564 F.3d at 1379, and that the "focus of judicial review of agency action remains the administrative record, which should be supplemented only if the existing record is insufficient to permit meaningful review consistent with the APA," <u>id.</u> at 1381.  The Federal Circuit's decision in <u>Axiom Resource Management, Inc.</u> ultimately requires that courts determine whether additional evidence that is not part of the agency-assembled record is "necessary in order not 'to frustrate effective judicial review.'" <u>Id.</u> (quoting <u>Camp v. Pitts</u>, 411 U.S. 138, 142-43 (1973)).  Thus, incorporation of extra-record evidence into the administrative record is justified when "required for meaningful judicial review," <u>Impresa Construzioni Geom. Domenico Garufi v. United States</u>, 238 F.3d 1324, 1338 (Fed. Cir. 2001); <u>accord</u> <u>Murakami v. United States</u>, 46 Fed. Cl. 731, 735 (2000) (noting that the <u>Esch</u> exceptions to the general rule against extra-record evidence "are <u>based upon necessity</u>, rather than convenience, and should be triggered only where the omission of extra-record evidence precludes effective judicial review" (emphasis added)), or when "the record is insufficient for the Court to render a decision," <u>Portfolio Disposition Mgmt. Group, LLC v. United States</u>, 64 Fed. Cl. 1, 12 (2005); <u>accord</u> <u>CCL Serv. Corp.</u>, 48 Fed. Cl. at 119 (stating that supplementation is appropriate where the record "still has lacunae that should be filled based on the protestor's challenges").  Although courts have employed a "flexible approach" in numerous bid protests to determine the corpus of evidence that will be considered, <u>Cubic Applications, Inc.</u>, 37 Fed. Cl. at 350, supplementation of the administrative record ultimately "'must be extremely limited,' lest the admission of evidence not considered by the agency below and its consideration by the court convert the 'arbitrary and capricious' standard into effectively <u>de novo</u> review." <u>Murakami</u>, 46 Fed. Cl. at 735.

### III. DISCUSSION

It is well settled that the "primary focus" of the court's review of agency decision making "should be the materials that were before the agency when it made its final decision." <u>Cubic Applications, Inc.</u>, 37 Fed. Cl. at 349-50.  Thus, the court must have a record containing all the information upon which an agency relied when it made its decision, together with any documentation that reveals the agency's decision-making process.  <u>Vanguard Recovery Assistance, Joint Venture v. United States</u>, No. 11-39C, 2011 WL 2120796, at *10 (Fed. Cl. May 27, 2011) (citing <u>Citizens to Preserve Overton Park, Inc. v. Volpe</u>, 401 U.S. 402, 420 (1971)).  Appendix C of this court's rules enumerates a nonexhaustive list of "core documents" that are relevant to a bid protest.  <u>See</u> RCFC App. C § 7, ¶ 22.  The agency is expected to produce the core documents set forth in paragraph 22 "<u>and the remainder of the administrative record</u> as promptly as circumstances will permit." <u>Id.</u> ¶ 23 (emphasis added).  "Materials that otherwise qualify as part of the administrative record may not be excluded from the record merely because they are available in electronic form only," <u>id.</u>, and the court may order production of "[a]<u>ny additional documents</u> within the administrative record," <u>id.</u> ¶ 24 (emphasis added).

The court's review of agency action is conducted "based upon the record the agency presents to the reviewing court," <u>Fla. Power & Light Co.</u>, 470 U.S. at 744, and agencies "exercise

some judgment in furnishing the court with the relevant documents," Cubic Applications, Inc., 37 Fed. Cl. at 350. Granting agencies the authority to retroactively create an administrative record once the adversarial process has commenced, however, "may preclude the 'substantial inquiry' and 'thorough, probing, in-depth review' the court must perform" in bid protests. Mike Hooks, Inc. v. United States, 39 Fed. Cl. 147, 156 (1997) (quoting Volpe, 401 U.S. at 415). Consequently,

> [i]n order to preserve a meaningful judicial review, the parties must be able to suggest the need for other evidence . . . aimed at determining, for example, whether other materials were considered, or whether the record provides an adequate explanation to the protester or the court as to the basis of the agency action. . . . [T]his court has adopted a flexible approach . . . , balancing the limited nature of the court's review with the competing need to recognize potential exceptions to treating the agency's submission as the four corners of the inquiry.

Cubic Applications, Inc., 37 Fed. Cl. at 350; see also Mike Hooks, Inc., 39 Fed. Cl. at 155 (recognizing that the "breadth of the court's review has to be tailored in each case"). Thus, the contents of the administrative record "cannot be wholly contingent," PlanetSpace Inc., 90 Fed. Cl. at 4, and "a reviewing court has power to require an explanation" for an agency's actions, Impresa Construzioni Geom. Domenico Garufi, 238 F.3d at 1338.

## A. Plaintiffs Seek Completion, Rather Than Supplementation, of the Administrative Record

In Axiom Resource Management, Inc., the Federal Circuit rejected the broad approach to supplementation of the record utilized by the trial court, which permitted the parties to incorporate into the record numerous documents, including post-procurement declarations from the protester's employees. See Axiom Res. Mgmt., Inc. v. United States, 78 Fed. Cl. 576, 586 n.10 (2007). The trial court then relied upon those post-procurement declarations to enjoin performance of the task order at issue. 80 Fed. Cl. at 539. The Federal Circuit reversed, explaining that the trial court abused its discretion by failing to examine the agency-filed record in order to make a threshold determination of whether effective judicial review was possible without resort to additional, extra-record evidence. 564 F.3d at 1380.

To the extent that defendant and defendant-intervenors rely upon Axiom Resource Management, Inc. to oppose plaintiffs' motions, such reliance is misplaced. But see Vanguard Recovery Assistance, Joint Venture, 2011 WL 2120796, at *10 (stating that motions to "amend or supplement" the record are governed by Axiom Resource Management, Inc.). The court must always exercise restraint when considering whether an administrative record requires supplementation. See Office Depot, Inc. v. United States, 94 Fed. Cl. 294, 296 (2010). Yet, the Federal Circuit's primary concern in Axiom Resource Management, Inc. was preventing courts from admitting new evidence into the record and relying upon that evidence to engage in a de

10

novo review of agency action.  Admission of new evidence into an agency-assembled record is a separate and distinct issue from completing the record through incorporation of materials generated or considered by the agency itself during the procurement process.  <u>See, e.g.</u>, <u>NEQ, LLC v. United States</u>, 86 Fed. Cl. 592, 593 (2009) (explaining that the addition of two electronic-mail messages that were before the agency when it rendered its award decision was not "supplementing the administrative record . . . but merely . . . <u>ensuring the completeness of the record</u>" (emphasis added)).  Indeed,

> there is a distinction to be made between materials proffered to "supplement" or to "complete" the administrative record.  A procuring agency's initial submission to the court may omit information that is properly part of the administrative record because it served as a basis for the agency's award decision.  In such instances, subsequent admission of the omitted information is appropriate not to supplement the record, but to complete it.

<u>Linc Gov't Servs., LLC v. United States</u>, 95 Fed. Cl. 155, 158 (2010) (citations omitted).

Incorporating materials into the administrative record that were previously omitted is not novel.  <u>See, e.g.</u>, <u>Ceres Gulf, Inc. v. United States</u>, 94 Fed. Cl. 303, 307 (2010) (noting, in passing, that the government submitted a certified copy of the administrative record and subsequently added omitted materials); <u>PlanetSpace Inc.</u>, 90 Fed. Cl. at 4 ("Certain documents are necessarily part of the administrative record, notwithstanding their omission from an agency's submission.").  Plaintiffs, by seeking to incorporate into the record materials that were generated by the WHS during the procurement process or considered by it as part of its overall decision-making, do not seek to admit "new" or "extra-record" evidence.  For example, plaintiffs do not seek to depose WHS personnel, admit post-procurement declarations from their personnel, or incorporate any post-procurement documentation into the record designed to explain agency action.  Consequently, the guidance from the Federal Circuit in <u>Axiom Resource Management, Inc.</u>, as it relates to extra-record supplementation, is not implicated at this stage in the proceedings.

**B.  Completion of the Administrative Record Is Necessary for Effective Judicial Review**

Following <u>Axiom Resource Management, Inc.</u>, the essential question that courts must ask is whether omission of extra-record evidence would "frustrate effective judicial review."  564 F.3d at 1381 (quoting <u>Pitts</u>, 411 U.S. at 142).  What constitutes "effective judicial review" or "meaningful review" varies depending upon the circumstances of each case: "It is this court's responsibility to decide cases for the right reasons and to ensure that the position of both parties is fully understood in order not to 'frustrate effective judicial review.'"  <u>Acad. Facilities Mgmt. v. United States</u>, 87 Fed. Cl. 441, 455 (2009).  When a court determines whether extra-record evidence is necessary to effectuate meaningful review, it does so after examining the complete agency record.  <u>See</u> <u>Volpe</u>, 401 U.S. at 420 (stating that judicial review is "based on the <u>full administrative record</u>" that was before the agency at the time it made its decision (emphasis

11

added)).  Accordingly, motions to supplement the record are generally entertained only after the agency has produced what it certifies represents a complete record of the acquisition.

If a court cannot engage in effective judicial review in certain cases without resorting to the admission of extra-record evidence to supplement a complete agency record, then it almost certainly cannot engage in effective judicial review in the absence of a complete agency record. A complete administrative record is the predicate to meaningful and effective judicial review of agency action, and it is that complete record that is subject to supplementation, if necessary, based upon the unique circumstances and issues presented by a particular protest.  Here, it appears that the record, as it is currently constituted, is incomplete and requires the inclusion of additional documents and materials.

### C.  The WHS Must Provide a Complete Record of the NIEITS Procurement

Defendant concedes that the agency-assembled record is not a complete record of the NIEITS procurement, stating that the record instead is comprised only of documents upon which the WHS purportedly relied when it made its procurement decision.  Yet, an agency may not exclude information merely on the grounds that it did not rely upon the excluded information when reaching a final decision when there was evidence that the information was, in fact, reviewed.  See Ad Hoc Metals Coal. v. Whitman, 227 F. Supp. 2d 134, 139 (D.D.C. 2002). Plaintiffs allege numerous violations of statutes and regulations, and misconduct on the part of the WHS throughout the procurement process, including, among other things, failure to provide excluded offerors an opportunity to file a preaward protest.  See NetServices's Am. Compl. ¶¶ 76-80; Comint's First Am. Compl. ¶¶ 79-82.  They also raise issues related to why proposals that the WHS deemed eligible for award during one stage of the procurement were later deemed ineligible during later stages of the procurement.  See NetServices's Am. Compl. ¶ 77; Comint's First Am. Compl. ¶¶ 24, 26, 54-63.  These issues concern the WHS's procurement procedures and decision-making process, but the current record is incomplete because it is silent with respect to these and other elements of the NIEITS procurement.  Indeed, the current agency-assembled record contains no certification by the WHS that the documents contained therein comprise the complete record of administrative actions performed during the NIEITS procurement.  The purpose of bid protests is to "protect the integrity of the procurement process and to safeguard protester rights," Jonathan R. Cantor, Bid Protests and Procurement Reform: The Case for Leaving Well Enough Alone, 27 Pub. Cont. L.J. 155, 155 (1997), by providing a mechanism for review of agency action.  The court's review function is undermined when an agency assembles a record that consists solely of materials that insulate portions of its decision from scrutiny or that it deems relevant to specific allegations raised by a protester.  See Exxon Corp. v. Dep't of Energy, 91 F.R.D. 26, 33 (N.D. Tex. 1981) (stating that the "'whole' administrative record . . . consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position" (emphasis added) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 487-88 (1951)).

The court rejects the position taken by defendant and defendant-intervenors that plaintiffs should not be permitted access to agency materials related to Amendment 5 because their protests are untimely. Timeliness of plaintiffs' protests is an entirely separate and distinct matter that bears no relation to the requirement that the WHS produce a complete agency record of the NIEITS procurement. It is the role of the court, not that of the WHS, to determine whether plaintiffs' protests are untimely. In the meantime, plaintiffs are entitled to review the complete record and develop further the grounds for their protests. If defendant and defendant-intervenors seek to challenge portions of plaintiffs' amended complaints on timeliness grounds, then they should do so at the appropriate time, which is not until after the WHS has produced a complete record of the NIEITS procurement. Accordingly, the motions to dismiss portions of the original complaints filed by defendant and DMI are denied as moot.[7]

Nevertheless, certain materials within subcategories 4 and 5 of NetServices's motion may be inappropriate for inclusion into the administrative record at this time because they are internal deliberative materials, which are generally excluded from the record. See Tafas v. Dudas, 530 F. Supp. 2d 786, 800 (E.D. Va. 2008); cf. FTC v. Warner Commc'ns, Inc., 742 F.2d 1156, 1161 (9th Cir. 1984) ("Purely factual material that does not reflect deliberative processes is not protected." (citing EPA v. Mink, 410 U.S. 73, 87-89, 93 (1973)). As the D.C. Circuit has stated, "[a]gency deliberations not part of the record are deemed immaterial. That is because the actual subjective motivation of agency decisionmakers is immaterial as a matter of law–unless there is a showing of bad faith or improper behavior." In re Subpoena Duces Tecum, 156 F.3d 1279-80 (D.C. Cir. 1998) (citation omitted); see also Tummino v. C. Von Eschenbach, 427 F. Supp. 2d 212, 234 (E.D.N.Y. 2006) (noting that a deliberative process privilege does not apply where a showing of bad faith has been made (citing Volpe, 401 U.S. at 420)).

Although NetServices contends that its amended complaint "cites evidence suggesting bad faith," NetServices's Reply 15, it has not specifically alleged bad faith or improper behavior on the part of the WHS during the NIEITS procurement "because it does not possess sufficient evidence to meet the high evidentiary burden of proof," id. at 14-15. Absent pled allegations and a "reasonable factual predicate" therefor, L-3 Commc'ns Integrated Sys., L.P. v. United States, 91 Fed. Cl. 347, 355 (2010), the court cannot conclude at this time that internal deliberative materials that fall within subcategories 4 and 5 are relevant to complete the agency record.[8]

In short, the court grants plaintiffs' motions save for inclusion into the record of internal deliberative materials concerning a need or justification for Amendment 5. The WHS shall provide a complete record of the NIEITS acquisition that includes the materials requested by plaintiffs and any other materials absent from the current record that relate to its decision-making

---

[7] Defendant and DMI may renew their motions to dismiss in accordance with the modified scheduling order that the court has concurrently issued.

[8] NetServices may renew its request for these materials if it alleges bad faith or bias on the part of the WHS during the NIEITS procurement and makes the requisite showing.

process.  Furthermore, the court grants in part plaintiffs' joint supplemental motion with respect to (1) NetCentrics's potential organizational conflicts of interest and the WHS's efforts to evaluate any mitigation plans, and (2) any omitted portions of NetCentrics's oral proposal presentation, and denies in part as moot that portion of the joint supplemental motion addressing pricing worksheets that are already in the record.

## IV.  CONCLUSION

For the foregoing reasons, NetServices's motion is **GRANTED IN PART** and **DENIED IN PART**, Comint's motion is **GRANTED IN PART** and **DENIED IN PART**, and plaintiffs' joint supplemental motion is **GRANTED IN PART** and **DENIED IN PART AS MOOT**. Defendant's motion to dismiss is **DENIED AS MOOT** and DMI's motion to dismiss is **DENIED AS MOOT**.

Furthermore:

1.  Defendant shall coordinate with agency counsel in order to–

   (a) compile any and all remaining materials, with the exception of deliberative materials concerning a need or justification for Amendment 5, that were not previously produced but complete the record of the NIEITS acquisition, and

   (b) assemble those materials into an additional volume or volumes of the administrative record on CD-ROM, complete with a table of contents.

2.  Defendant shall file the CD-ROM containing the additional volume or volumes of materials **by no later than 5:00 p.m. Eastern Daylight Time on Thursday, July 21, 2011**.  Defendant shall provide copies of the CD-ROM to the parties–and two bound courtesy copies of the additional volume or volumes to chambers–by the same deadline set forth above.  In the event that defendant cannot obtain a complete recording of NetServices's oral proposal presentation, it shall file, concurrent with its filing of the additional volume or volumes of the administrative record and by the same deadline set forth above, a status report detailing the efforts it made to obtain a complete recording and why the recording is unavailable.

The court has filed this decision under seal.  The parties shall confer to determine any proposed redactions.  Then, the parties shall file under seal a joint status report indicating their agreement with the proposed redactions, together with a complete copy of the court's decision with all redactions clearly indicated, by no later than **5:00 p.m. Eastern Daylight Time on Friday, July 22, 2011**.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge